CV-05 3526



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

JOSEPHINE CARONIA,

     Plaintiff,

    -against-

(8.7)

HUSTEDT CHEVROLET, HUSTEDT CHEVROLET, INC.,
HUSTEDT CHEVROLET WEST,
HUSTEDT CHEVROLET WEST, INC., HUSTEDT
HYUNDAI, HUSTEDT HYUNDAI, INC., and CHARLES
CHALOM, individually and in his official capacity as
owner and/or agent of Husted Chevrolet, Hustedt Chevrolet, Inc.,
Hustedt Chevrolet West,  Husted Chevrolet West, Inc., Hustedt
Hyundai, and Hustedt Hyundai, Inc., THOMAS JONES,
JONES & LITTLE, CPA's, P.C. and JOHN DOES 1-20,

     Defendants.

———————————————————————X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 2 7 2005  ★

LONG ISLAND OFFICE

VERIFIED
COMPLAINT

**HURLEY, J.**
**ORENSTEIN, M.**

JURY TRIAL
DEMANDED

     Plaintiff, Josephine Caronia ("Plaintiff" or "Caronia"), by and through her

attorneys, Steinberg, Fineo, Berger & Fischoff, P.C., complaining of the Defendants,

Hustedt Chevrolet, Hustedt Chevrolet, Inc.,Hustedt Chevrolet  West, Hustedt Chevrolet

West, Inc., Hustedt Hyundai, Hustedt Hyundai Inc. (hereinafter individually referred to

by name or collectively as the "Hustedt Defendants"),  Charles Chalom,  ("Chalom")

individually and in his official capacity as owner and/or agent of Husted Chevrolet,

Hustedt Chevrolet, Inc.,Hustedt Chevrolet West,  Husted Chevrolet West, Inc., Hustedt

Hyundai, Hustedt Hyundai, Inc., Thomas Jones ("Jones"), Jones & Little, CPA's, P.C.

(" Jones & Little") and John Does 1-20, alleges as follows:

### NATURE OF THE CASE

1. This is a lawsuit alleging sexual harassment and a hostile work environment under

    Title VII, 42 U.S.C. section 2000e-2 et seq., disability discrimination under the

Americans with Disabilities Act, 42 U.S.C. section 12101 et seq., age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. section 621 et seq., and retaliation. This lawsuit also alleges sexual harassment, hostile work environment, age discrimination, disability discrimination, and retaliation under the New York State Human Rights Law, Executive Law sections 290 et seq. and tort claims under the common law of the State of New York. Relief is sought under each of the above referenced statutes, the Civil Rights Act of 1991, 29 U.S.C. section 1981a, and under common law principles. An award of attorneys fees is sought under the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. section 1988.

JURISDICTION AND VENUE

2.  This Court has jurisdiction over the within action under Federal question jurisdiction pursuant to 28 U.S.C. Section 1331. Jurisdiction over the supplemental state claims arises under 28 U.S.C. section 1367. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this district, and the defendants have a place of business in this district.

3.  Plaintiff Caronia duly filed a charge of discrimination and an amended charge of discrimination with the Equal Employment Opportunity Commission. The Plaintiff's charge of discrimination was assigned Charge No. 160-2005-01066. Plaintiff Caronia received a Notice of Right to Sue dated May 3, 2005 from the

Equal Employment Opportunity Commission. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

4. Plaintiff, Caronia, is a 60 year old female and is a citizen of the United States, and a resident of the State of New York, County of Suffolk.

5. Defendant Hustedt Chevrolet, is upon information and belief, a duly organized business entity doing business within the State of New York, County of Suffolk, at 1815 Middle Country Road, Centereach, New York.

6. Defendant, Hustedt Chevrolet, Inc., is upon information and belief, a corporation duly organized and existing under the laws of the State of New York with its principal place of business located in the State of New York, County of Suffolk at 1815 Middle Country Road, Centereach, New York

7. Defendant, Hustedt Chevrolet West, is upon information and belief, a duly organized  business entity doing business within the State of New York, County of Nassau, at 383 Jericho Turnpike, Floral Park, New York.

8. Defendant, Hustedt Chevrolet West, Inc. is upon information and belief, a corporation duly organized and existing under the laws of the State of New York with its principal place of business located in the State of New York, County of Nassau at 383 Jericho Turnpike, Floral Park, New York.

9. Defendant, Hustedt Hyndai is upon information and belief, a duly organized business entity doing business within the State of New York, County of Suffolk at 1752 Middle Country Road, Centereach, New York

10. Defendant, Hustedt Hyundai, Inc. is upon information and belief, a corporation duly organized and existing under the laws of the State of New York with its principal place of business located in the State of New York, County of Suffolk at 1752 Middle Country Road, Centereach, New York

11. Upon information and belief, Defendants Jones and Jones & Little is and/or are Certified Public Accountants doing business in the State of New York, County of Suffolk.

12. Defendants John Does 1-20 are, upon information and belief, various persons and/or business entities who are parties to contracts with the above referenced Hustedt Defendants.

13. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Hustedt Chevrolet.

14. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Hustedt Chevrolet, Inc.

15. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Hustedt Chevrolet West.

16. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Hustedt Chevrolet West, Inc.

4

17. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Husted Hyundai.

18. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and is the owner and/or an officer and/or director, and/or shareholder of Hustedt Hyundai, Inc.

19. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Hustedt Chevrolet.

20. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Hustedt Chevrolet, Inc.

21. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Hustedt Chevrolet West.

22. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Hustedt Chevrolet West, Inc.

23. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Husted Hyundai.

24. Defendant Chalom, is, upon information and belief a resident of the State of New York, County of Nassau, and operates and/or maintains and/or controls Hustedt Hyundai, Inc.

## BACKGROUND

25. At all times relevant hereto, Caronia was an employee of Hustedt Chevrolet.

26. At all times relevant hereto, Caronia was an employee of Hustedt Chevrolet, Inc.

27. At all times relevant hereto, Caronia was an employee of Hustedt Chevrolet West.

28. At all times relevant hereto, Caronia was an employee of Hustedt Chevrolet West, Inc.

29. At all times relevant hereto, Caronia was an employee of Hustedt Hyundai.

30. At all times relevant hereto Caronia was an employee of Hustedt Hyundai, Inc.

31. At all times relevant hereto, Chalom was an "employer" within the meaning of each of the above referenced statutes.

32. At all times relevant hereto, Hustedt Chevrolet was an "employer" within the meaning of each of the above referenced statutes.

33. At all times relevant hereto, Hustedt Chevrolet, Inc. was an "employer" within the meaning of each of the above referenced statutes.

34. At all times relevant hereto, Hustedt Chevrolet West was an "employer" within the meaning of each of the above referenced statutes.

35. At all times relevant hereto, Hustedt Chevrolet West, Inc. was an "employer" within the meaning of each of the above referenced statutes.

36. At all times relevant hereto, Hustedt Hyundai was an "employer" within the meaning of each of the above referenced statutes.

6

37. At all times relevant hereto, Hustedt Hyundai, Inc. was an "employer" within the meaning of each of the above referenced statutes.

38. Defendants, Jones and/or Jones & Little is and/or are upon information and belief, Certified Public Accountants duly licensed to practice in and within the State of New York.  At various times relevant hereto, Defendant Jones and/or Jones & Little performed accounting services for Plaintiff Caronia.

39. Defendants John Does 1-20 are, upon information and belief, various persons and/or entities who, at all times relevant hereto were parties to contracts with one or more of the Hustedt Defendants.

40. Upon information and belief, the aforesaid contracts with the Hustedt Defendants contained provisions requiring moral and/or lawful behavior by the Hustedt Defendants.

41. At all times relevant hereto from in or about the year 1995 until on or about February 8, 2005, Caronia was employed by the Hustedt Defendants as Office Manager and Controller, and was an exemplary employee.

42. At all times relevant hereto, Caronia was qualified for the position of Office Manager/Controller.

43. At all times relevant  hereto, defendant Chalom was Caronia's supervisor.

44. At all times relevant hereto, Caronia was subjected to a severe and pervasive pattern and practice of unlawful and unwelcome quid pro quo sexual harassment by defendant Chalom, and by the Hustedt Defendants which, although aware of the severe and pervasive pattern and practice of sexual harassment against

7

Caronia, failed and/or refused to remedy the pattern and practice of sexual harassment against Caronia.

45. The severe and pervasive pattern of unlawful and unwelcome quid pro quo sexual harassment included, but was not limited to the following:

46. Caronia and Chalom had had a consensual personal relationship with one another until in or about the year 2000 when Caronia advised Chalom that she no longer wished to continue the consensual relationship. Following and despite Caronia's having advised Chalom that she no longer wished to have a personal relationship with him, Chalom, on almost a daily basis for an approximate five year period of time, commencing in or about 2000 and continuing through February 8, 2005, made unwanted entreaties to Caronia for a continued sexual relationship with him.

47. On a virtual daily basis, Chalom directed slurs and epithets at Caronia as a result of her refusal of his sexual advances and/or entreaties.

48. Caronia was subjected to adverse job consequences which negatively altered the terms and conditions of her employment as a result of refusing Chalom's sexual entreaties and/or advances, and in retaliation for her complaints about defendant Chalom's behavior towards her.

49. In December of 2004, Caronia was informed by defendant Chalom that her pay was being cut by Five Hundred Dollars ($500.00) per week. When Caronia objected to this pay cut, defendant Chalom told her to take it or leave it and get out. Defendant Chalom also threatened Caronia that unless she accepted the pay cut and continued to work at the lesser rate of pay, he would call the police and have her thrown off the premises.

8

50. Defendant Chalom told Caronia relating to the pay cut, that things would "get better" for her if she gave him what he wanted. Defendant Chalom advised Caronia that she was being singled out amongst the other employees for this cut in pay.

51. Although Caronia had received yearly bonuses during her employment with the Hustedt Defendants, in December of 2004, Defendant Chalom advised her that he was withholding her usual bonus. Defendant Chalom stated as the reason for this action, that business was bad, and that it was Caronia's fault that business was bad because her refusal of his sexual advances was making it difficult for him to concentrate on business.

52. At all times relevant hereto, Caronia was subjected to a severe and pervasive pattern and practice of unlawful and unwelcome hostile work environment as a result of the sexual harassment committed against her by Defendant Chalom, and by the Hustedt Defendants.

53. Defendant Chalom on a number of occasions, committed harmful and/or offensive touching of Caronia's body, and/or placed his hands upon Caronia's body while knowing that such physical contact was unwanted and unwelcome.

54. Defendant Chalom placed Caronia in fear of grievous bodily harm. As a result of her refusal of his sexual advances he stated a number of times to her that one day he was going to just rape her.

55. In or about November of 2004, Defendant Chalom came to Caronia's desk upon arriving for work in the morning, wrapped his arms around her, pulled her to him and forcibly kissed her. Later that same day, while Caronia was in Chalom's

9

office attempting to discuss a business matter, Chalom again placed his hands on Caronia and forcibly tried to kiss her. In response to Caronia's demanding that Chalom stop, Chalom stated that he needed a "real kiss" from her. Chalom backed Caronia against the wall and struggled to force her to kiss him.

56. Approximately in or about December of 2004, Defendant Chalom again tried to forcibly kiss Caronia in the office. During this incident, Caronia backed away from Chalom and slipped down a staircase, only narrowly avoiding serious injury.

57. On another occasion, in or about January of 2005, Caronia was called by Defendant Chalom into his private office. In front of Caronia and within her sight, Chalom sat in his chair and grabbed his crotch area. When Caronia turned around to leave the office, Chalom got up, placed his hands on her and again forcibly attempted to kiss her; in response to this behavior, Caronia backed away and hit her head on the wall of the office.

58. At least three times within the year 2004, Chalom thanked Caronia for "putting up with him" then approached her and grabbed her buttock area. In response to Caronia's stating that Chalom should leave her alone, Chalom stated get the f--- out if you don't like it."

59. Defendant Chalom telephoned Caronia at home on a number of occasions at late and inappropriate hours, cursing at her and asking to come to her home. It was necessary for Caronia to change her telephone number to an unlisted number because of Chalom's refusal to stop making such calls.

10

60. On July 4, 2004 Defendant Chalom ordered Caronia to attend a meeting between himself and two sales managers even though matters were being discussed that had nothing to do with Caronia's job. During the meeting, Chalom became enraged, and threw a crystal object against the wall near where Caronia was sitting, sending glass flying, and placing her in danger of being injured. Upon information and belief, this incident was another attempt by Chalom to harass and intimidate Caronia.

61. Defendant Chalom's pattern of behavior included his continuous use of vulgar and offensive language, and his directing inappropriate behavior, comments.and inquiries towards Caronia concerning her off-duty social relationships and other matters concerning her personal life. This hostile and offensive behavior occurred not only in Caronia's presence but in the presence of members of the female office staff and other employees.

62. Defendant Chalom called Caronia into his office a number of times and exposed himself to her, asking whether she wanted to see what she was missing.

63. Chalom used foul language in front of the entire female office staff, and told stories of a sexual and ethnic nature involving circumcision, his sexual behavior, and his private parts. On one occasion, he spoke inappropriately of a trip to Germany and his use of a prostitute there.

64. On another occasion, after Caronia had mentioned in a discussion with female co workers that she would have liked to have been in the hotel business, Defendant Chalom stated to Caronia in front of everyone that she would have to serve him

11

and wait on him and do whatever he asked. Following these remarks he spoke of dancing the Lambada and began doing this type of dancing.

65. On a number of occasions (at times when he was not on premises) Defendant Chalom called Caronia at the dealership and asked about business matters. Chalom asked Caronia how she was doing and then made vulgar and inappropriate statements such as "Any man who doesn't want to f--- you doesn't have a d---." Chalom additionally made remarks to Caronia that she had a lickable p----." On a number of occasions, the last occasion being in or about January of 2005, Chalom telephoned Caronia while he was on vacation and made inappropriate sexual remarks, including that he wished he was with her rather than his wife, and that his wife had brought prostitutes to his hotel room for his use.

66. In or about January of 2004 Defendant Chalom told Caronia he had caught a "disease" from a prostitute and that it had been "her fault" because she would not "give it to him." After two months Chalom told Caronia he had been cured and asked her again to engage in sex with him.

67. A number of times, Defendant Chalom told Caronia she was not "respecting" him and that she was a "bitch" because she didn't want to have sex with him.

68. In response to Caronia's objections to Chalom's offensive remarks and her refusal to listen to them, he hampered Caronia's ability to perform her job by refusing to speak with her or discuss business matters related to her job.

69. In or about December of 2004, Caronia had been interviewed by a police detective who sought information concerning a certain employee. Chalom was

12

aware that Caronia had been interviewed and that she had been asked by the police to maintain the confidential nature of the interview.    A few days later, while Caronia was asking the employee some work related questions, Chalom asked him why he was helping Caronia and falsely told the salesman Caronia had called the police on him.

70. Chalom falsely and repeatedly  accused Caronia of having sexual relationships with male employees, and repeatedly asked questions to the effect of, "why him and not me?"

71.  In or about January of 2005 Chalom falsely accused Caronia of paying a manager extra money because she was (according to Chalom) sleeping with that manager.

72. On a number of occasions, Chalom caused Jones and/or Jones & Little, to audit and/or review and/or investigate Caronia's performance as the Controller and nothing improper relating to Caronia's performance was found by Jones and/or Jones & Little.   Chalom told Caronia these reviews and/or investigations would continue because she would not accede to his sexual advances.

73.  In or about January of 2005, Chalom falsely accused Caronia of overpaying a cleaning company based on his false allegation that she was having a sales manager's apartment cleaned.

74. Chalom admitted to Caronia and other members of the office staff and other employees that his behavior was wrongful and admitted to his office staff that he was sexually harassing Caronia and that he would admit it in any court of law.

13

75. Mr. Chalom issued threats to Caronia and her employment status if she dated or engaged in a relationship with anyone else. He spit on the floor in front of Caronia when he became aware she was dating another man and called the man a "Spic."

76. Chalom used vulgar and offensive language on a continuous basis and made repeated statements in response to Caronia's and other employees' asking him to stop his behavior towards Caronia to the effect of "I can do whatever the f--- I want."

77. Chalom repeatedly asked other male employees if they were having a sexual relationship with Caronia and/or accused other male employees of having a sexual relationship with her.

78. Chalom asked Caronia to go on vacation with him instead of with her boyfriend. He asked Caronia to leave her boyfriend for him and told her he was obsessed with her.

79. Chalom made statements to Caronia concerning her body and her age. He asked Caronia "how do you keep those t--- so high at your age," told her "I don't need an old lady like you, I can get young prostitutes," and called her the "old lady."

80. It is known to Chalom that Caronia is an Italian-American. On numerous occasions, Chalom made discriminatory remarks and slurs against various minorities in her presence and in the presence of other employees, over protests by Caronia and other employees. Chalom regularly used words such as "Niggers" "Spics" "Nazi" and "Goombas." In response to Caronia's objections to such remarks, Chalom called her "mother superior."

14

81. In or about the year 2004, a sexual harassment training seminar was held at Husted Chevrolet's premises at 1815 Middle Country Road, Centereach, New York. The sexual harassment training seminar was held in response to complaints of sexual harassment made against Chalom by other female employees besides Caronia. Upon information and belief, Chalom regarded the training as a joke and expressed disdain for laws relating to sexual harassment in employment.

82. Caronia was constructively discharged from her employment with Chalom and the Hustedt Defendants on or about February 8, 2005. When Chalom arrived at work that morning, Caronia asked him a work related question, and he responded to this question by screaming in front of the office staff, "she is attacking me." Caronia later attempted again to obtain an answer to her question, whereupon Chalom began again screaming at her, "you call me master, I am your master, do you hear me?" The same day, Chalom approached Caronia's desk and said "you do not intimidate me" while forcefully poking at her arm and making other aggressive and/or threatening gestures towards her. In response to female staff members interceding and telling him to stop, Chalom said he was going to intimidate Caronia, stated that she was "out of control," that she "needed to be put in" her "place" and that she "needed to be controlled." This behavior and physical assaults and/or batteries upon her person placed Caronia in fear of injury and caused her to leave.

83. In addition to the foregoing sexual harassment, Caronia is also the victim of discrimination on the basis of her age.

15

84. Caronia is over the age of 40 and is in the protected age category for purposes of the Age Discrimination in Employment Act.

85. Caronia was the oldest worker in the offices of the Hustedt Defendants, and upon information and belief, was older than other office managers/Controllers employed by Chalom at other automobile dealership locations he owned. Caronia was subjected to a cut in pay and/or loss of bonus ostensibly because of business conditions, while none of the other younger employees suffered cuts in pay/ losses as a result of the aforementioned ostensible slowdown in business.

86. Upon information and belief, Caronia was also singled out for denial of a bonus in or about December of 2004. Upon information and belief, other younger members of the office staff at Hustedt Chevrolet received their bonuses at the time of or shortly after it was denied to Caronia.

87. Chalom replaced Caronia in her former position with a younger worker who, upon information and belief, is in her mid 20's.

88. In addition to the foregoing, Caronia is the victim of discrimination on the basis of an actual and/or perceived disability in violation of the Americans with Disabilities Act.

89. Chalom was made aware during Caronia's employment that she suffers from a heart condition. Upon information and belief, the harassment of Caronia by Chalom was motivated at least in part in an effort to cause her undue stress and/or aggravate her medical condition such that she would be forced her to leave the Hustedt Defendants' employ.

16

90. Chalom's actions were in violation of Caronia's rights to be free from sexual

harassment, and/or age discrimination and/or disability discrimination under the

New York State Executive Law, Human Rights Law.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT CHALOM AND THE HUSTEDT DEFENDANTS

91.     Plaintiff repeats and realleges Paragraphs 1-90 as if set forth more fully hereat.

92.     Caronia is a female and is within the protected class of persons under Title VII.

93.     Caronia was subjected to unwelcome quid pro quo sexual harassment in

employment by Chalom and the Hustedt Defendants.

94.     Caronia was subjected to a severe, and pervasive pattern of unwelcome sexual

harassment by Chalom and the Hustedt Defendants amounting to and/or constituting a

hostile work environment.

95.     The sexual harassment of Caronia by Chalom and the Hustedt Defendants

occurred because of and was based on Caronia's gender.

96.     The sexual harassment of Caronia by Chalom and the Hustedt Defendants

negatively altered the terms, conditions, and privileges of Caronia's employment.

97.     Upon information and belief, the discrimination was done willfully and/or

recklessly, and/or intentionally.

98.     As a result of defendants' unlawful acts, plaintiff has been damaged in her person,

property and employment and has been deprived of wages, benefits, terms and conditions

of employment and other entitlements which she would have received but for defendant's

unlawful conduct.

17

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

99. Plaintiff repeats and realleges Paragraphs 1-98 as if set forth more fully hereat.

100. Caronia was subjected to dimunition in her compensation and other adverse employment actions and was treated in an unlawful and discriminatory manner as compared to younger employees not in the protected age category.

101. Upon information and belief, the discrimination was done willfully and/or recklessly, and/or intentionally.

102. Caronia was replaced in her position by a younger, less qualified employee not in the protected age category.

103. The aforesaid unequal and adverse treatment of Caronia by Chalom and the Hustedt Defendants occurred under circumstances giving rise to an inference of age discrimination in employment.

104. As a result of defendants' unlawful acts, plaintiff has been damaged in her person, property and employment and has been deprived of wages, benefits, terms and conditions of employment and other entitlements which she would have received but for defendant's unlawful conduct.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

105. Plaintiff repeats and realleges Paragraphs 1-104 as if set forth more fully hereat.

106. Caronia suffered from a medical condition (ie a heart condition) at all times relevant hereto, including, but not limited to during her employment with Chalom and the Hustedt Defendants.

18

107.    Caronia's heart condition was a disability within the meaning of the Americans with Disabilities Act.

108.    Alternatively, Caronia was a person with a record of having a disability and/or perceived as having a disability.

109.    At all times relevant hereto, Chalom and the Hustedt Defendants were aware that Caronia suffered from a heart condition.

110.    Upon information and belief, Caronia was subjected to unduly stressful and/or otherwise adverse working conditions by Chalom and the Hustedt Defendants in an effort to cause her constructive discharge from employment.

111.    Chalom's harassment of Caronia caused her stress, humiliation, embarrassment, and emotional distress, which aggravated and/or worsened her medical condition.

112.    Upon information and belief, the aforesaid harassment and discrimination was done willfully and/or recklessly, and/or intentionally.

113.    The foregoing actions by Chalom and the Hustedt Defendants were taken as a result of and/or based on Caronia's disability in violation of Caronia's right to be free from discrimination based upon her disability and/or perceived disability and/or record of disability.

114.    Upon information and belief, Caronia was replaced by an employee who does not suffer from a disability and/or perceived disability.

115.    As a result of defendant's unlawful acts, plaintiff has been damaged in her person, property and employment and has been deprived of wages, benefits, terms and conditions of employment and other entitlements which she would have received but for defendant's unlawful conduct.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

116.    Plaintiff repeats and realleges Paragraphs 1-115 as if set forth more fully hereat.

117.    Caronia was a female, was older than other similarly situated employees, and was a person with a disability and/or a record of a disability and/or a perceived disability within the meaning of the New York State Executive Law, Human Rights Law.

118.    Caronia was subjected to an unwelcome pattern and practice of sexual harassment in employment by Chalom and the Hustedt Defendants.

119.    Caronia was subjected to age discrimination in employment by Chalom and the Hustedt Defendants.

120.    Caronia was subjected to discrimination as a result of her disability and/or record of having a disability and/or perceived disability.

121.    The aforesaid sexual harassment, age discrimination, and disability discrimination occurred under circumstances giving rise to an inference of unlawful discrimination.

122.    The aforesaid sexual harassment, age discrimination, and disability discrimination negatively altered the terms, conditions, and privileges of Caronia's employment all in violation of the New York State Human Rights Law, and constituted continuing violations.

123.    As a result of defendant's unlawful acts, plaintiff has been damaged in her person, property and employment and has been deprived of wages, benefits, terms and conditions of employment and other entitlements which she would have received but for defendant's unlawful conduct.

20

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

124.    Plaintiff repeats and realleges Paragraphs 1-123 as if set forth more fully hereat.

125.    Chalom and the Hustedt Defendants willfully subjected Caronia to an outrageous and offensive pattern of conduct utterly intolerable in a civilized society.

126.    The aforesaid outrageous and offensive pattern of conduct constituted intentional infliction of emotional distress upon Caronia, and damaged Caronia in her person and plaintiff was compelled to and will be compelled in the future to incur expense for medical care and treatment, and plaintiff believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment all to her damage.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

127.    Plaintiff repeats and realleges Paragraphs 1-126 as if set forth more fully hereat.

128.    Chalom, individually, and in his official capacity as owner/officer and/or shareholder of the Hustedt Defendants negligently subjected Caronia to an outrageous and offensive pattern of conduct utterly intolerable in a civilized society, and thereby placed her in a foreseeable zone of danger.

129.    The aforesaid outrageous and offensive pattern of conduct constituted negligent infliction of emotional distress upon Caronia, and damaged Caronia in her person and Caronia was compelled to and will be compelled in the future to incur expense for medical care and treatment, and Caronia believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment all to her damage.

21

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST CHALOM AND THE HUSTEDT DEFENDANTS

130. Plaintiff repeats and realleges Paragraphs 1-129 as if set forth more fully hereat.

131. Chalom intentionally, and willfully, and with the intent to cause harm to Caronia, committed assaults and/or batteries upon her person.

132. The aforesaid assaults and/or batteries upon Caronia by Chalom have damaged Caronia in amounts to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST CPA'S JONES

133. Plaintiff repeats and realleges Paragraphs 1-132 as if set forth more fully hereat.

134. Upon information and belief, Defendants Jones and/or Jones & Little performed accounting services including, but not limited to audits and preparation of tax returns for the Hustedt Defendants.

135. Plaintiff engaged Defendants Jones and/or Jones & Little to perform personal accounting services for her including, but not limited to preparation of tax returns.

136. Defendants Jones and/or Jones & Little was and/or were aware of and/or should have been aware of Plaintiff's compensation by the Hustedt Defendants.

137. Defendants Jones and/or Jones & Little had a duty to perform accounting services for Plaintiff in a competent and professional manner, including, but not limited to rendering competent and/or professional advice.

138. Defendants Jones and/or Jones & Little breached the aforesaid duty to Plaintiff and negligently and/or recklessly failed to provide competent and/or professional advice to Plaintiff in the preparation of her tax returns.

139.    The aforesaid negligence by Defendants Jones and/or Jones & Little has subjected the Plaintiff to potential additional tax liability, penalties, and/or interest, all to her damage.

140.    The aforesaid breach of duty by Defendants Jones and/or Jones & Little has damaged the Plaintiff in amounts to be determined at trial.

### AS AND FOR A NINTH CAUSE OF ACTION AGAINST CPA's JONES

141.    Plaintiff repeats and realleges paragraphs 1-140 as if set forth more fully hereat.

142.    Defendants Jones and/or Jones & Little and  had a contractual and/or implied contractual relationship with Plaintiff.

143.    Defendants Jones and/or Jones & Little 's contractual and/or implied contractual relationship with Plaintiff included, among other things, an implied duty of good faith.

144.    The aforesaid contractual and/or implied contractual relationship with Plaintiff contained and/or included, among other things, an obligation on the part of
Jones and/or Jones & Little to prepare Plaintiff's tax returns in a professional and/or competent manner and to render competent and professional advice to Plaintiff in the preparation of said returns.

145.    Defendants Jones and/or Jones & Little failed and/or neglected to observe the aforesaid contractual and/or implied contractual duties to Plaintiff, thereby breaching the contractual and/or implied contractual relationship with Plaintiff.

146.    The aforesaid breach has subjected Plaintiff to damages including, but not limited to actual and/or potential tax liability, penalties, and/or interest all to her damage.

### AS AND FOR A TENTH CAUSE OF ACTION AGAINST JOHN DOES 1-20

147.    Plaintiff repeats and realleges Paragraphs 1-146 as if set forth more fully hereat.

148. Upon information and belief, Defendants John Does 1-20 are parties to a contract or contract(s) with one or all of the Hustedt Defendants.

149. Upon information and belief, the aforesaid contract(s) contains and/or contain provisions governing the conduct of the Hustedt Defendants' businesses.

150. Upon information and belief, the contract(s) includes and/or include provision and/or provisions concerning and requiring moral and/or lawful behavior by Chalom and the Hustedt Defendants.

151. Upon information and belief, Plaintiff and other employees of the Hustedt Defendants were actual and/or implied third party beneficiaries of the aforesaid contractual provisions.

152. Upon information and belief, Chalom has engaged in prior incidents of sexual and other harassment against other female employees of the Hustedt Defendants besides Caronia, and has engaged in prior incidents of other unlawful behavior with regard to employees of the Hustedt Defendants.

153. Upon information and belief, Defendants John Does 1-20 were aware and/or should have been aware of these prior incidents of sexual and other harassment against Hustedt employees by Chalom.

154. In addition, upon information and belief, Defendants John Does 1-20 are and/or should have been aware of the sexually harassing and hostile work environment against Plaintiff and other Hustedt employees by Chalom.

155. Upon information and belief, the discrimination and other unlawful conduct practiced by Chalom and/or by the Hustedt Defendants was a violation of the terms of the aforesaid contracts.

156.    Defendants John Does  1-20 negligently and/or recklessly failed and/or refused to

enforce the aforesaid contractual provisions, all to Plaintiff's damage, in amounts to be

determined at trial.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

1.  On the FIRST CAUSE OF ACTION, awarding all damages as may be awarded

by statute, including but not limited to back pay, front pay, compensatory

damages, actual damages, incidental damages, consequential damages, lost

wages, benefits, bonuses, and any salary increases plaintiff would have received

from the date of defendants' unlawful acts in amounts to be determined at trial but

not less than Two Million Dollars ($2,000,000.00) along with punitive damages in

amounts to be determined at trial of this action and attorneys fees and costs in

favor of the plaintiff and against the defendants;

2.  On the SECOND CAUSE OF ACTION, awarding damages including back pay,

and compensatory damages including but not limited to lost wages, benefits,

bonuses and any salary increases plaintiff would have received from the date of

defendant's unlawful acts; plus liquidated damages, in amounts to be determined

at trial but not less than Two Million Dollars ($2,000,000.00) along with an award

of attorneys fees and costs in favor of the plaintiff and against the defendants;

3.  On the THIRD CAUSE OF ACTION, awarding all damages as may be awarded

by statute, including but not limited to back pay, front pay, compensatory

damages, actual damages, incidental damages, consequential damages, lost

wages, benefits, bonuses, and any salary increases plaintiff would have received

from the date of defendants' unlawful acts in amounts to be determined at trial but

not less than Two Million Dollars ($2,000,000.00) along with punitive damages in amounts to be determined at trial of this action and attorneys fees and costs in favor of the plaintiff and against the defendants;

4. On the FOURTH CAUSE OF ACTION, awarding damages including back pay, front pay, lost wages, benefits, bonuses, and any salary increases plaintiff would have received from the date of defendants' unlawful acts in amounts to be determined at trial but not less than Two Million Dollars ($2,000,000.00) along with an award of attorneys fees and costs in favor of the plaintiff and against the defendants;

5. On the FIFTH CAUSE OF ACTION, awarding damages in amounts to be determined at trial but at least in the amount of Two Million Dollars ($2,000,000.00) along with punitive damages, attorneys fees, and costs;

6. On the SIXTH CAUSE OF ACTION, awarding damages in amounts to be determined at trial but at least in the amount of Two Million Dollars ($2,000,000.00) along with punitive damages, attorneys fees, and costs;

7. On the SEVENTH CAUSE OF ACTION, awarding damages in amounts to be determined at trial but at least in the amount of Two Million Dollars ($2,000,000.00) along with punitive damages, attorneys fees, and costs;

8. On the EIGHTH CAUSE OF ACTION, awarding damages in amounts to be determined at trial;

9. On the NINTH CAUSE OF ACTION, awarding damages in amounts to be determined at trial;

10. On the TENTH CAUSE OF ACTION, awarding damages in amounts to be

determined at trial;

Awarding such other and further relief as to this Court may seem just and proper in

the premises.

Plaintiff demands a jury trial of all issues which may be so tried.

Respectfully submitted,

STEINBERG, FINEO, BERGER & FISCHOFF, P.C.
Attorneys for Plaintiff
40 Crossways Park Drive
Woodbury, New York 11797
(516) 747- 1136

7/27/05

By:
Harry R. Thomasson, Esq. (HRT-8404)

STATE OF NEW YORK)
                 )
COUNTY OF SUFFOLK)ss.:

JOSEPHINE CARONIA, being duly sworn, deposes and says:

I am the Plaintiff in the within action, and have read the annexed Verified
Complaint  and know the contents thereof to be true to my own knowledge, with the
exception of those matters therein stated to be alleged upon information and belief, and as
to those matters I believe them to be true.

JOSEPHINE CARONIA

Duly sworn to before me this

28 day of July, 2005.

CAROL WHALEN
Notary Public, State of New York
Qualified in Nassau County
No. 01WH5066986
Commission Expires October 7, 2006

# EXHIBIT A

OC Form 161-B (10/96)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:Josephine Caronia
45 Neal Path
S. Setauket, New York 11720

From:
    Equal Employment Opportunity Commission
    New York District Office
    33 Whitehall Street, 5ᵗʰ Floor
    New York, New York 10004-2112

[   ]  *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR § 1601.7(a))*

| harge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 50-2005-01066 | Legal Unit | (212) 336-3721 |

*(See also the additional information attached to this form.)*

### iOTICE TO THE PERSON AGGRIEVED:

itle VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under 'itle VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA iust be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on this charge ill be lost. (The time limit for filing suit based on a state claim may be different.)

[   ]  More than 180 days have passed since the filing of this charge.

[ X ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ X ]  The EEOC is terminating its processing of this charge.

[   ]  The EEOC will continue to process this charge.

ige Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed ntil 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies o your case:

[ X ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[   ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

!qual Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought n federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for iny violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

f you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr., District Director

**MAY 0 3 2005**

*(Date Mailed)*

:nclosure(s)

:c:  Respondent(s):
    Charles Chalom-Hustedt Chevolet, et al
    c/o Robert Millman
    Marshall M. Miller Assoc., Inc.
    3000 Marcus Ave., Suite 3W3
    Lake Success, New York 11042

CP Atty:  Sharon Stone
    Steinberg, Fineo, Berger & Fischoff
    401 Broadhollow Road
    Melville, New York 11747