## MILMAN LABUDA LAW GROUP PLLC

3000 MARCUS AVENUE
SUITE 3W3
LAKE SUCCESS, NEW YORK 11042

TELEPHONE (516) 328-8899
FACSIMILE (516) 328-0082

Author: Perry S. Heidecker – Senior Counsel
Direct E-Mail Address: perryheidecker@mllaborlaw.com
Direct Dial: (516) 303-1440

<u>Via ECF</u>

January 28, 2008

Hon. Michael L. Orenstein, U.S.M.J
United States District Court
Eastern District of New York
Alphonse M. D'Amato Federal Courthouse
100 Federal Plaza
Central Islip, New York 11722

**Re: Caronia v. Hustedt Chevrolet, et al.**
   **Docket No. CV-05-3526**
   **Our File 39-05**

Dear Judge Orenstein:

As you know, the undersigned has acted as lead counsel for all Defendants except Tom Jones and Jones & Little in the above-referenced matter.

On the morning of January 25, 2008, I received Mr. Thomasson's letter of that date. Although my first inclination was to dismiss the letter as a specious and self-serving "tattle-tale" ploy that the Court would reject out of hand, an abundance of caution compels me to submit a reply.

We respectfully remind the Court that Plaintiff's counsel have spared no effort to portray defense counsel in a bad light, usually without justification. The volume of whining, hyper-technical and misleading correspondence penned by our adversaries in this case has already killed a small forest. Mr. Thomasson's missive is just the latest example.

<u>The Preliminaries</u>

On pages 1 and 2 of Mr. Thomasson's letter, he alleges various offenses that he believes constituted an enormous waste of the parties' time.

First and foremost, Mr. Thomasson takes exception to my insistence that Messrs. Gadelkareem and Coppola be allowed to attend the deposition. Mr. Gadelkareem

*Hon. Michael L. Orenstein, U.S.M.J*
*January 28, 2008*
*Page 2*

appeared in his capacity as the representative of Hustedt Chevrolet and Mr. Coppola appeared in his capacity as a retained expert in the areas of dealership finance and operations (a capacity in which he has appeared and participated in status conferences before your Honor on several occasions).

Rather than engage in extended and heated debate among counsel, I insisted that the matter be brought before the Court. It quickly became apparent that the dispute could have been easily resolved by reference to the terms of the Confidentiality Order entered by the Court on June 23, 2006 (Docket #26). Although Mr. Thomasson was, by his own admission, aware of the existence of the Confidentiality Order, he had not taken the trouble to acquaint himself with its terms. Therefore, Judge Hurley's Law Secretary produced copies, at my request, and sustained my position.

Rather than waste further time, I sent Mr. Gadelkareem away and placed Mr. Coppola in an adjacent room. The deposition then proceeded.

In his letter, Mr. Thomasson then proceeds to chide Mr. Chalom for shaking his head and laughing to himself. This is an incredibly trivial complaint. Mr. Chalom was neither communicating to the witness nor interfering with the deposition, as demonstrated by the fact that the morning session proceeded without disruption.

In fact, Mr. Thomasson concedes at the bottom of page 2 of his letter that he would not be "disturbing the Court with my complaints" based on the foregoing allegations. This can only lead to the conclusion that Mr. Thomasson's disingenuous assertions are only intended to inflame and anger the Court against the Defendants.

## The Argument Among Counsel

The gravamen of Mr. Thomasson's diatribe finds its origin in a furious exchange among counsel – an exchange that Mr. Thomasson himself provoked!

As lead counsel, I was conducting the examination. A large part of the morning session consisted of confronting Ms. Caronia with the various checks that she signed and deposited into her personal bank accounts (Exhibits F and I). Upon examination pertaining to the first three (3) checks contained on the first page of Exhibit F, Ms. Caronia admitted that she had received the funds. Mr. Thomasson then suggested the possibility of a stipulation. I answered, in substance, that I wanted to complete my questioning concerning the remaining two (2) checks shown on the first page of the exhibit.

Upon completion of my examination pertaining to the first page of exhibit F, I suggested that we go off the record and that counsel retire to an adjacent room to explore the possibility of a stipulation.

Robert Milman, Esq., who was present to assist me in the conduct of the examination, stated that Ms. Caronia would now have to admit that she took the money in question. Mr. Thomasson responded by stating that she had authorization and that she admitted that she received the money. Mr. Milman rejoined by stating that "you would have never admitted to that."

Mr. Milman's statement was entirely consistent with the official record in this case. In Paragraph 43 of Defendants' first counterclaim, it is alleged:

*During the time of her employment by the Hustedt Defendants, Plaintiff, without authorization or color of right, wrote and signed checks made payable to herself or to cash and then deposited said checks in her own personal bank account.*

In Paragraph 3 of Plaintiff's Verified Reply To Counterclaims, it is alleged:

*Plaintiff denies the allegations contained in paragraph 43, except as to those allegations contained in paragraph 43 that assert conclusions of law to which no response is required.*

Mr. Milman was only stating the obvious: there was no reason to believe that the Plaintiff was going to admit facts that she had previously and officially denied! If, in fact, Plaintiff was going to change her position on the matter, it was incumbent upon her to amend her pleadings. However, it is a matter of record that she failed or refused to do so – even to this very day!

Much to my amazement, Mr. Thomasson became aggressive, agitated and belligerent. He accused Mr. Milman of not knowing what he was talking about (although Mr. Milman was apparently more familiar with the record than Mr. Thomasson) and admittedly directed profanity, including the "F word," at him. The situation then deteriorated into a shouting match between Messrs. Thomasson and Milman.

It should be noted in passing that this exchange between Messrs Milman and Thomasson continued until <u>Mr. Milman</u> ended it by leaving the room. Although Mr. Thomasson was the aggressor, Mr. Milman withdrew. I then proceeded to work out a stipulation.

Apparently, Ms. Caronia was waiting in the hall outside the scene of the argument. She inappropriately goaded Mr. Milman with an inappropriate comment and received a withering blast in return. Had Ms. Caronia not provoked a confrontation with Mr. Milman, nothing would have been said to her. She deliberately injected herself into the incident.

Even though Ms. Caronia initiated the exchange, Mr. Milman subsequently apologized. Apparently recognizing his client's role in the incident, Mr. Thomasson said

*Hon. Michael L. Orenstein, U.S.M.J*
*January 28, 2008*
*Page 4*

that nothing more would be made of the incident – a representation that Mr. Thomasson apparently forgot when he wrote his letter to the Court!

The carnage subsequently continued in the courthouse cafeteria. Much to my embarrassment, when the combatants were both on the sandwich line, Mr. Thomasson resumed his exchange of words with Mr. Milman, despite my efforts to separate the two of them. I was embarrassed by him and for him; unprofessional conduct is bad enough by itself. It is made much worse when it is conducted in full public view.

The gist of the matter is clear and even undisputed. Mr. Thomasson initiated the exchange and continued it, even after Mr. Milman had broken it off by withdrawing. The fact that Mr. Milman responded with heat and anger is only a natural consequence of the provocation to which he was subjected by Mr. Thomasson and Ms. Caronia.

## The Remaining Allegations

Mr. Thomasson raises several additional allegations in his letter of January 25, 2008.

Mr. Thomasson complains that Mr. Chalom insisted on engaging in sports-related conversations with him. That's the most ridiculous allegation I have ever heard from a grown man. Apparently both men are avid sports fans. I have personally heard them engage in extended conversations about the Boston Red Sox and the New England Patriots. Both men participated and neither man objected. In fact, Mr. Thomasson even curtailed the deposition of Paul Coppola on October 24, 2007 to drive to Boston so he could attend the first game of the World Series, a fact that was discussed at some length at the time. The fact that such discussions are now alleged to constitute some form of aggravated misconduct plumbs new depths of triviality.

Mr. Thomasson raises the additional complaint against Mr. Chalom that he stated it was "hot" in the deposition room. Apparently Mr. Thomasson believes this is some sort of code. Needless to say, there is no evidence to support this claim. (By the way, it was hot in the deposition room. I personally removed my suit jacket and kept it off for the entire duration of the deposition.)

Mr. Thomasson alleges that defense counsel are "milking" this case by putting in an excessive number of hours for the purpose of generating fees. I don't see how Mr. Thomasson can make such a claim. He has never seen any billing or time records from my firm. He has no knowledge on this subject whatever. He can think whatever he likes. However, before he complains to the Court, he better have some proof.

Mr. Thomasson alleges that defense counsel has wasted an inordinate amount of time. However, this is a case of "the pot calling the kettle black." Mr. Thomasson and his firm have squandered a huge amount of time by their obstructive and dilatory tactics. A few examples will suffice to illustrate the point.

Case 2:05-cv-03526-DRH-ARL   Document 90   Filed 01/28/08   Page 5 of 9 PageID #: 527

Hon. Michael L. Orenstein, U.S.M.J
January 28, 2008
Page 5

- Plaintiffs were almost six (6) full months late in responding to Defendants' initial discovery demands. The numerous courtesies afforded by this office, however, did not deter Plaintiffs' counsel from running to the Court for relief every time they could seize upon real or imagined discovery infractions by Defendants.

- Mr. Thomasson has represented *in open court* that he intended to withdraw several of Plaintiffs' causes of action. Yet, despite two (2) written reminders from me, he has failed or refused to do so. This has necessitated discovery that will ultimately prove unnecessary, thus wasting time and money.

- Mr. Thomasson has abused the deposition process. As mentioned earlier, he wasted witness and attorney time by deposing Mr. Coppola for one and one-half hours. The deposition could have been consolidated with others in order to utilize a full day. Mr. Thomasson, however, chose to take the rest of the day off to go to a baseball game. (This behavior continues. On January 17, 2008, Mr. Thomasson conducted a solo deposition of Wendy Penalver that lasted less than twenty (20) minutes!)

- Further, there are numerous incidents on the record of Mr. Thomasson openly coaching witnesses during their depositions. For example, I examined Ms. Caronia on the source of certain funds. Mr. Thomasson objected that she couldn't answer without supporting documents in front of her. Taking her cue, Ms. Caronia immediately stated that she couldn't answer my question without supporting documents in front of her. This is a direct violation of FRCP Rule 30(d)(1) which provides that objections must be made in a non-argumentative and non-suggestive way.

Q.   (by Mr. Heidecker) Ms. Caronia, you deposited $60,000 in the course of three days. Is it your testimony you don't recall where any of that money came from?

MR. THOMASSON: With no document in front of her?

MR. HEIDECKER: I just want her testimony, not yours, Mr. Thomasson.

A.   (by Ms. Caronia) Without a document in front of me, I really can't say.

(Deposition of Josephine Caronia, January 26, 2008, P. 627, L. 22 – P. 628, L. 7).

- Similarly, Mr. Thomasson has improperly instructed Ms. Caronia not to answer questions, all in violation of FRCP Rules 30(d)(1) and 30(d)(4) on at least two (2) occasions. Here is one example:

Q. (by Mr. Heidecker) Ms. Caronia, prior to coming here today, other than counsel, have you spoken to anyone about your testimony?

MR. THOMASSON: Objection. You got a time frame (sic)?

Q. You can answer.

MR. THOMASSON: No. No. No. I will instruct and tell my client when to answer and when not to answer. What's the time frame?

MR. HEIDECKER: I said before coming here today.

MR. THOMASSON: So since she was born? I object.

MR. HEIDECKER: Are you instructing your witness not to answer? Are you instructing the witness not to answer?

MR. THOMASSON: Yes. I object to the form of that question. Please do not answer it. Mr. Heidecker will rephrase the question.

MR. HEIDECKER: No. Mr. Heidecker will not rephrase the question. Mr. Thomasson, I am assuming that you are familiar with the Federal Rules of Civil Procedure?

MR. THOMASSON: Mr. Heidecker, I want a time frame applied to the question.

MR. HEIDECKER: You don't get to dictate the questions, Mr. Thomasson. You can note your objection for the record. The Civil Rules of Procedure only allow you to direct the witness not to answer in certain limited circumstances, and if you insist on directing the witness not to answer, you subject yourself to sanctions. I will note your objection for the record, but I will not accept a direction not to answer.

MR. THOMASSON: Mr. Heidecker, we have a stipulation –

MR. HEIDECKER: Mr. Thomasson, are we clear?

MR. THOMASSON: Are you going to let me finish any sentence today, Mr. Heidecker?

MR. HEIDECKER: Not unless you say something that makes sense.

MR. THOMASSON: Mr. Heidecker, please. I just want to state for the record that we have a stipulation today that objections as to form are not reserved until trial. They shall be stated now. I object to the form of that question, given that there is no time frame involved. This witness has undergone multiple days of deposition

testimony. I do not know what preparation, if any, was made before those days. Your question can be construed to include those days. I don't – and they were months and months ago. I simply want to know what time frame we are talking about. You are the one that is impeding the progress of this deposition, Mr. Heidecker, if you actually have a genuine problem regarding that.

MR. HEIDECKER: You objection is noted for the record. I'm asking the witness – directing the witness to answer the question. Do you direct the witness not to answer the question?

MR. THOMASSON: I don't know what the question is. Can the court reporter read the question back please?

(The requested portion was read.)

MR. THOMASSON: I would object and simply instruct the witness to answer the question without respect to counsel and only in the time frame since her last deposition appearance.

MR. HEIDECKER: That is an inappropriate instruction.

MR. THOMASSON: Good. I am instructing my client how to answer the question. Go ahead -

(Deposition of Josephine Caronia, January 18, 2008, P. 417, L. 13 – P. 421, L. 9).

- It must be recalled that proceedings were delayed when Ms. Caronia postponed her deposition on December 21, 2007 on the pretext that a co-worker had become sick or injured. On that occasion, the Defendants were ready willing and eager to proceed – as they informed the Court! Now Mr. Thomasson informs the parties that the depositions must be completed by January 28, 2008, even though he himself has not completed the deposition of Tom Jones and Ms. Caronia delayed her own deposition!

This list is illustrative only and does not purport to be comprehensive.

## The Relief Requested

By way of relief, Mr. Thomasson asks the Court for several things.

First, he asks the Court to hold a hearing on January 28, 2007 to determine the accuracy of the facts as he alleges them. Defendants welcome the opportunity to refute Mr. Thomasson's claims in detail.

Second, Mr. Thomasson asks the Court to admit his letter into evidence at the trial as an admission against interest and evidence of retaliation. Since none of the conduct in question has either been established or bears on the merits of the case, this request is inappropriate.

Third, Mr. Thomasson requests the Court to consider holding a hearing on the issue of her thefts of company funds. This is an extraordinary request indeed. Mr. Thomasson can attempt to have the claims of theft against his client dismissed either by motion for summary judgment or at trial. Perhaps Mr. Thomasson is suggesting that the Court create some new method of resolving issues that is not provided for in the Federal Rules of Civil Procedure.

## Some Closing Thoughts

Mr. Thomasson would have the Court believe that Defense counsel were wreaking havoc on the discovery process throughout the January 18, 2008 deposition of Ms. Caronia. This is simply not true. A few points need to be made.

First, throughout his letter, Mr. Thomasson failed to inform the Court that the parties conducted two very full days of deposition, amassing 339 pages of testimony and introducing 37 exhibits into the record. These were very productive sessions.

Second, Mr. Thomasson did not think anything that happened on January 18 was serious enough to warrant Court intervention *at the time it was actually happening!* Instead, he waited a full week, until (not coincidently) immediately before a Court conference to air his complaints. Mr. Thomasson now proceeds to complain - even though he himself told Mr. Milman that his apology ended the matter.

Third, Ms. Caronia was not being questioned by Mr. Milman; she was being questioned by me. There are no allegations whatever that I was abusing the witness in any way.

Fourth, Mr. Thomasson alleges that the witness was greatly upset by Mr. Milman's words. However, after the luncheon recess, she resumed her testimony without hesitation or apparent distress and continued until the close of the deposition at 5:00 p.m.

Fifth, the outburst between counsel took place off the record and out of the presence of the witness.

Sixth, Mr. Thomasson excoriates the Defendants for alluding to the criminal investigation into Ms. Caronia's financial defalcations that is currently being conducted by the Suffolk County District Attorney's office. However, Mr. Thomasson himself has resorted to exactly the same conduct. In his letter to the Court, he states that there may be a criminal prosecution against Mr. Chalom for filing a "false instrument."

*Hon. Michael L. Orenstein, U.S.M.J*
*January 28, 2008*
*Page 9*

    Mr. Thomasson aggravates this misconduct even further by accusing Mr. Chalom "and possibly his attorneys" have committed multiple counts of perjury. This slanderous allegation is incredibly offensive and unprofessional, bringing the entire profession into disrepute.

    Mr. Thomasson's letter is a thinly-veiled, one-sided attempt to place the Defendants at a disadvantage. However, putting the true facts in their proper context reveals his complaints for what they really are: distortion, manipulation and exaggeration.

    There are no saints in a courtroom. Attorneys are expected and required to fight hard for their clients. But there are rules to govern the combat. In this case, Mr. Thomasson has broken more of those rules than anybody else on the battlefield. His whines of protest should, therefore, fall on deaf ears.

                    Very truly yours,

                      MILMAN LABUDA LAW GROUP, PLLC

                      Perry S. Heidecker

PSH:amm
cc:    Harry Thomasson, Esq. – via fax -(516) 747-0382
        Sharon Simon, Esq. – via fax - (516) 747-0382
        John Napolitano, Esq.- via fax - (718) 835-7126
        Gary Robins, Esq.- via fax - (516) 873-1721