UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPHINE CARONIA,

                    Plaintiff,                                      **MEMORANDUM & ORDER**

          -against-                                                Civil Action No. 05-3526
                                                                   (DRH) (MLO)
HUSTEDT CHEVROLET, HUSTEDT CHEVROLET,
INC., HUSTEDT CHEVROLET WEST, HUSTEDT
CHEVROLET WEST INC., HUSTEDT HYUNDAI,
HUSTEDT HYUNDAI, INC., and CHARLES CHALOM,
individually and in his capacities as owner and/or agent of
Hustedt Chevrolet, Hustedt Chevrolet, Inc., Hustedt Chevrolet
West, Hustedt Chevrolet West, Inc.,Hustedt Hyundai,
and Hustedt Hyundai, Inc., THOMAS JONES, JONES &
LITTLE, CPA'S, P.C. and JOHN DOES 1-20

                    Defendants.

------------------------------------------------------------------X


**APPEARANCES:**

**Steinberg, Fineo, Berger & Fischoff, P.C.**
Attorneys for Plaintiff
401 Broadhollow Road, 4th Floor
Melville, New York 11746
By:     Sharon D. Simon, Esq.

**Milman Labuda Law Group, PLLC**
Attorneys for Defendants Hustedt Chevrolet, Hustedt
Chevrolet, Inc., Hustedt Chevrolet West, Hustedt
Chevrolet West Inc., Hustedt Hyundai,
Hustedt Hyundai, Inc., and Charles Chalom
3000 Marcus Avenue, Suite 3003
Lake Success, New York 11042
By:     Perry S.  Heidecker, Esq.
          Michael J. Mauro, Esq.

**HURLEY, Senior District Judge:**

This action is one of several pending before this Court in which a former employee of Defendants Hustedt Chevrolet, Hustedt Chevrolet Inc. ("Chevrolet Inc."), Hustedt Chevrolet West, Hustedt Chevrolet West Inc. ("West Inc.") Hustedt Hyundai, and/or Hustedt Hyundai, Inc. ("Hyundai Inc.") (collectively "Dealership Defendants") is seeking redress for the alleged discriminatory and retaliatory practices of Defendant Charles Chalom ("Chalom"),[1] owner of Dealership Defendants, and hostile work environment created by him. In the instant case, Plaintiff Josephine Caronia ("Plaintiff" or "Caronia") asserts claims under federal and New York state statutes for sexual harassment, hostile work environment, disability discrimination, age discrimination, and retaliation.[2] She also asserts common law causes of action. Presently before the Court is Defendants' motion for summary judgment on Caronia's claims for age and disability discrimination and her common law causes of action of intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. For the reasons set forth below, the motion is granted except for assault and battery claims occurring on or after July 27, 2004.

### *Background*

Dealership Defendants are engaged in the sale and lease of cars and trucks.

---

[1] Dealership Defendants and Chalom shall be collectively referred to as Defendants.

[2] The Court notes that Plaintiff has advised it that her claims against Defendants Thomas Jones and Jones & Little, CPA's, P.C. have been settled although no stipulation of discontinuance has been filed.

Chalom owns 100% of the stock of Chevrolet Inc. and Hyundai Inc.[3]  He has the final decision-making authority for the Dealership Defendants and supervised their employees, including Caronia.  Caronia worked at Dealership Defendants at least since 1995 and remained employed until February 8, 2005.  She held the position of office manager/controller and was over sixty years of age at the time her employment ended.  According to Caronia, on February 8, 2005, she was subjected to a physical assault by Chalom accompanied by his screaming at her to the point where felt her safety was in danger and she was constructively discharged.  When Caronia left the dealership, her duties were folded into the existing duties of one Wendy Penalver[4].  Other co-workers of  Caronia were Frank Ventimiglia ("Ventimiglia"), Andrew Levy ("Levy"), Kevin Pratt ("Pratt"), and Paul Weiss ("Weiss").  Pratt, Weiss, Ventimiglia and Levy all commenced actions against Defendants alleging discrimination.  It is alleged, among other things, that Chalom was given to constant outbursts of unlawful and inappropriate epithets against different racial and ethnic groups.

Caronia and Chalom had a personal relationship that ended in or about the year 2000.  Chalom paid her home mortgage and apartment rental fee from 1995 through January 2005.  According to Caronia, from the day she told Chalom that their relationship was over until the day she left her job, Chalom engaged in a course of conduct against her.  The course of conduct, she claims, included the following: "Chalom would call [Caronia] into his office and would say that she was ruining his sex life.  Chalom would say she was holding his dick hostage.

[3] It is also uncontested that Chalom owned all the stock of  West Inc. until June 31, 2007, when General Motors bought all of the stock and shut West Inc. down.

[4] The parties have not directed the Court's attention to any factual  information regarding Penlaver's age.

Chalom would call Caronia cold and a bitch.  If Caronia walked out of the office he would say

get out and stay out to her.  If she was standing at one of the desks, he would rub up against her.

Chalom would say to Caronia in front of the office staff that she was provoking him with her tits

and her ass and that his anger was her fault.  This continued almost every day for five years."

(Pl.'s Resp. to Def.s' 56.1 Statement at ¶ 61 (citing Caronia Dep. at 70-71.)  Caronia also asserts

that "there were constant incidents of Chalom rubbing her and touching her.  The more she

objected the more he kept doing these things."  (*Id.* at ¶ 75 (citing Caronia Dep. at 209).)

Caronia's claims of sexual harassment and a sexually hostile work environment

are not at issue on this motion.  Accordingly, it is the evidence she proffers in support of her age

and  disability discrimination claims to which the Court now turns.

According to Caronia, in November 2004, Chalom promised the members of the

office staff, except for her, that they would be receiving raises in March of 2005.  In December

2004, she was informed by the dealership's outside accountant that she was going to get a

$500.00 per week pay cut.  Chalom told her she was the only manager receiving a pay cut, and

screamed at her she could take it or leave.  According to Caronia, business was bad at all of the

dealership's and she did not understand why she was being singled out.  Caronia also claims

Chalom made ageist comments:

> [Chalom] blurted out, "how do you keep those t---s so high at your
> age."  He told her, I don't need an old lady like you, I can get
> young prostitutes. . . . Chalom called Caronia the old lady
> frequently for a period of time, and she was embarrassed and
> humiliated by this remark.  When someone needed a check signed,
> Chalom would say, see the old lady, she will sign the check, loud
> enough for everyone to hear. . . . Chalom though it was amusing,
> and Caronia informed him she considered it offensive.  Chalom
> admitted calling Caronia "old lady." . . . Chalom also referred to

4

Caronia as Mother Superior quite a few times.

(Pl.'s Resp. to Def.s' 56.1 Statement at ¶¶ 51-52 (citations to depositions omitted).

Turning to her disability claims, Caronia relies upon her deposition testimony, which she summarizes in support of her claim that she was regarded as disabled and was the victim of disability discrimination as follows:

> Caronia testified that Chalom escalated his harassment of her because of her health, that she would tell him she was having a hard time and that she needed tranquilizers, and needed to be taking Xanax. Caronia further testified that when she was very upset, it would come out that she didn't feel well and that her blood pressure would go up, and that she was on more medication, and she would try to make Chalom understand that he was affecting her health with his threats. Chalom said the only reason she had a job was because he took pity on her. Caronia further testified that Chalom never treated her more favorably because of her health and that Chalom would ridicule her heart condition and say she was going to outlive him. Chalom told Caronia she was full of S--t.
>
> Caronia felt that Chalom had no regard for her health. He was pushing her to the limit where she had to go to the doctor more often, and had to take more medication than she was usually taking. Chalom was making Caronia reach a point where she could not focus upon or do her job. Caronia had a stent implantation in 1995 and thereafter suffered from high blood pressure and dizzy spells. Chalom escalated his harassment because of Caronia's health. Caronia told Chalom during an argument that she was being treated for high blood pressure, that she was on medication, and her head was exploding, and he had to stop. Caronia complained to Chalom that he was constantly attacking her causing her medical condition.

(Pl.'s Resp. to Def.s' 56.1 Statement at ¶¶ 51-52 (citations to depositions and paragraph numbering omitted).

Additional factual information shall be discussed to the extent relevant to the issues at hand.

*Discussion*

## I. Applicable Law and Legal Standards

### A. Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material

facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule

56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

## B.    The McDonnell-Douglas Burden-Shifting Methodology

In *McDonnell-Douglas Corporation v. Green*, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing

Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-511 (1993). Claims brought pursuant to the Age Discrimination in Employment Act ("ADEA") are also analyzed under the *McDonnell-Douglas* burden-shifting framework. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

Under *McDonnell-Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell-Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non," and thus (3) the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination based on the asserted protected class was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves*, 530 U.S. at 143.

Likewise, the employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing, *inter alia*, *Meiri*, 759 F.2d at 995 (2d Cir. 1985)), *aff'd*, 99 Fed. Appx. 350 (2d Cir. 2004). Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir. 1987)), and may not "sit as super personnel departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995). However, to rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co.*, 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations

of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."

*Meiri*, 759 F.2d at 998.

## II. Age Discrimination

### A. Prima Facie Case of Age Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).

Plaintiff claims that she was discriminated against because of her age because she had her pay cut by $500 and because she did not receive a bonus for 2004.

Defendants do not dispute that Plaintiff has satisfied the first three elements of her prima facie case. Rather, their focus is on the fourth element, i.e. whether the adverse action was under circumstances giving rise to an inference of discriminatory intent.

Plaintiff maintains that the circumstances do give rise to an inference of discriminatory intent. She points to Chalom's allegedly "repeated" references to her as "old lady;" and that "monetary sanctions were placed upon her but not her younger co-workers or counterparts in similar positions." (Pl.'s Mem. in Opp. at 8.) She claims:

> Hustedt's payroll records confirm that Caronia was subjected to a pay cut in or about November 2004, when her co-workers (other office employees) at Hustedt Chevrolet were not. (See Simon Aff. Exh. 7 [payroll records]. Caronia has also alleged she alone was denied a bonus while younger employees did not sufffer these adverse actions. Wendy Penalver, a younger employee who replaced Caronia, testified, 'We received our bonus in 2004 late. We received it in . . .either the end of February or beginning of March 2005." (Penalver dep. p. 97). This is at about the same time

11

Caronia was constructively discharged.

(*Id.*)

Turning first to the "old lady" comments, the proffered support that such statements were made is Caronia's deposition, where she testified:

> Q. The last comment alleges that he called you the old lady or an old lady?
> A. It was the old lady.
> Q. How many times did he refer to you as "the old lady?"
> A. I don't know how many times?
> Q. Was it a frequent occurrence?
> A. When I asked him to stop. I had enough of it, and he stopped. It was frequent for while.
> . . .
> A. When a manager would come in to his office, and he needed a check signed, he would say to the manager "See the old lady, she will sign the check." Loud enough for everyone to hear.
> . . .
> Q. You testified that he stopped. When did he stop using the term "the old lady?"
> A. I don't know when he stopped. We had a discussion about that term, and I told him it was offensive, and he didn't think it was. He thought that was a term like, I was his old lady, and he was going to let everybody know it. He thought it was amusing. I told him I didn't find it amusing, and I don't remember him calling me old lady anymore.

(Caronia Dep. at 331-32.)

While comments such as old lady by a decision maker "could be viewed as reflecting discriminatory animus," *Gregory v. Daly*, 243 F.3d 687, 697 (2d Cir. 2001), no such inference can be drawn here. There is simply no evidence that the statements were made anywhere near the time of the adverse action. *See Malatests v. Credit Lyonnais*, 2005 U.S. Dist. lexis 30334 (S.D.N.Y. Nov. 21, 2005) (stray remarks in the workplaces without a demonstrated nexus to the adverse action will not defeat a motion for summary judgment). Rather, one is left

12

to speculate concerning the amount of time between the comments and the adverse employment action, which given the length of plaintiff's employment at the dealership could be years. *Cf. Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination;" "the closer the remark's relation to the allegedly discriminatory behavior, the more probative the remark will be"). The Court notes, moreover, that in Plaintiff's deposition testimony recounting the circumstances and conversations concerning her pay cut, she makes no mention of any ageist comments. (*See* Caronia Dep. at 133-34, 143.) Rather, Plaintiff's testimony concerning the pay cut would, more appropriately leads to the inference that the decision to cut her pay was not motivated by her age, but rather formed a part of Chalom's alleged sexual harassment of Caronia (*See* Caronia Dep. at 132-34 (Chalom told Caronia "you know what I want, if you do what I want these things would not happen."; Caronia Dep. at 144 ( Chalom "said that the business was bad because it was my fault because I was refusing sex and he couldn't concentrate on business."). She submits no evidence of either ageist comments or comments evidencing a preference for young employees, coupled with any criticism of her performance or threat to employment. *Cf. Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37-38 (2d Cir. 1994).

Nor are the payroll records of other "office employees" relied upon by Caronia sufficient to defeat summary judgment. They merely show that Caronia's pay was cut in November of 2004 but that of other employees was not. Caronia does not provide evidence regarding the ages of each of these other employees, and thus the mere fact that Caronia's pay was cut while the pay of other office workers was not does not support an inference of age

discrimination.  *Cf. Peres v. Oceanside Union Free Sch. Dist.*, 2008 WL 305342, at *11 (E.D.N.Y. Jan. 31, 2008).  Similarly, that Caronia was denied a bonus while "younger employees" were not is not supported by evidence of the ages of the employees who supposedly did receive the bonus. Thus, the Court has no information as to whether these other employees though "younger" were in the protected age group.  Also, by Caronia's own evidence, the 2004 bonuses were not paid until either the end of February or beginning of March 2005.  While she maintains "[t]his was at about the same time she was constructively discharged," (Pl.'s Mem. in Opp. at 8), in fact her employment at the dealership had ended on February 8, 2005, the date of her claimed constructive discharge.

That Caronia's duties were taken over by Penlaver, a younger employee, provides no inference of age discrimination.  Penlaver was Caronia's assistant and thus the logical choice to assume Caronia's duties upon her departure.  *See Malatesta*, 2005 U.S. Dist. LEXIS 30334, *18 (S.D.N.Y. Nov. 21, 2005).

Finally, Caronia makes no attempt to reconcile her claim that she was "singled out" because of her age vis a vis the pay cut with the fact that Chalom paid her home mortgage and apartment rental fee from 1995 through January 2005.   She merely states that she did not know what other employees received in this regard as she "didn't take a survey."  (Caronia Dep. at 311.)

Even if plaintiff has met her burden of establishing a prima facie case, Defendants have shown a legitimate non-discriminatory reason for its actions: the financial condition of the dealership.  According to Defendants, in November 2004, Chevrolet Inc. and Hyundai Inc. had a year to date operating loss of over $890,000 and a negative net worth of over $200,000.  For the

14

entire 2004 calendar year, the dealerships had an operating loss in excess of $1.1 million and a negative net worth of over $450,000. (Chalom Aff. at ¶¶ 11-13.)[5] Despite her position as controller, when asked at her deposition whether she formed an impression that the dealership was not doing well financially in 2004, Caronia testified at her deposition that she "did not remember exactly the financial condition of the dealership in 2004." (Caronia Dep. at 171.)

Plaintiff claims that Defendants' purported justification cannot be credited because "[w]hen she asked why she was singled out, Chalom responded, 'because he's the owner and will do whatever the hell he wants . . . and for good measure added that, you know what I want, if you do what I want these things would not happen.'" (Pl.'s Mem. in Opp. at 9 (citing Caronia Dep. at 132-34).) Viewing the record as a whole, however, while a reasonable jury could conclude, based on the evidence presented to this Court, that Caronia's pay cut and denial of bonus was for an "improper motive," such a jury could not conclude that Plaintiff's *age* was a motivating factor.

Defendants' motion for summary judgment on Caronia's age discrimination claim is granted.

## III. Plaintiff's Disability Discrimination Claims

### A. The ADA Claims

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, prohibits employment discrimination by a "covered entity . . . against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Employers of

---

[5] There is evidence in the record that other dealership employee had their rate of compensation reduced at this time. *See, e.g.,* Dono Dep. at 169 (commission rate cut from 6% to 5%).

persons with disabilities are required to make reasonable accommodations for otherwise qualified individuals with disabilities and are prohibited from retaliating against an employee engaged in activities protected under the statute. *See id* §§ 12112(b)(5)(a), 12203(b). Employment discrimination claims under the ADA are evaluated under the now familiar burden-shifting analysis set forth in *McDonnell Douglas*. *See* discussion *supra*.

Before addressing the parties' arguments, the Court notes that the ADA was recently amended to substantially change the evaluation of ADA claims. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADA Amendments Act expressly provides that its provisions shall not take effect until January 1, 2009. When a case implicates a federal statute enacted after the events in suit, that statue will not be construed to have retroactive effect absent clear congressional intent. *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Given the 2008 Act's express effective date, there is no clear congressional intent to have it apply retroactively. Accordingly, the Court shall not apply the 2008 Amendments retroactively to the conduct at issue which preceded the 2008 Act's effective date. *Accord, EEOC v. Agro Distr. LLC,* 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008); *Budde v. Kane County Forest Preserve*, 2009 WL 736646, at *4 n.4 (N.D. Ill. Mar. 19, 2009); *Amorosi v. Molino*, 2009 WL 737338, at *4 n.7 (E.D. Pa. Mar, 19, 2009); *Czapinski v. Iron City Indus. Cleaning Corp.*, 2009 WL 614808, at *2 n.2 (W.D. Pa. Mar. 5, 2009).

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) plaintiff was disabled within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the essential functions

16

of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse

employment action because of her disability. *See Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198

(2d Cir. 2004) (citing *Cameron v. Cmty Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir.

2003)); *Shannon v. N.Y. City Transit Auth.,* 332 F.3d 95, 99 (2d Cir. 2003).

The exact nature of Caronia's ADA claim is unclear. At times it seems that she is

claiming her disability was not accommodated, and at other times she seems to be claiming that

she suffered a hostile work environment based on an alleged disability.[6] In any event, to proceed

under the ADA, she must meet the definition of disability contained therein. Because, as

discussed below, she does not, Defendants' motion is granted.

An individual with a "disability" is defined as any person who (1) has a physical

or mental impairment that "substantially limits" one or more "major life activities"; (2) has a

"record of such impairment"; or (3) is "regarded as" having such an impairment. 42 U.S.C. §

12102(2). Disability determinations are made on a case by case basis. *Reeves v. Johnson*

*Controls World Servs. Inc.*, 140 F.3d 144, 151-52 (2d Cir. 1998). Plaintiff asserts that she

qualifies under the third definition in that Chalom regarded her as having an impairment. (Pl.'s

Mem in Opp. at 15 ("As the Defendants themselves have recognized, whether or not Caronia

suffered from a disability that actually limited her ability to perform her job is inconsequential to

her maintenance of a disability discrimination claim as long as she was at least regarded as

having an impairment.").)

Caronia's claim that Chalom regarded her as disabled depends not on the

---

[6] The Second Circuit has not held that the ADA authorizes claims for hostile work
environment; however, some district courts have found that the ADA does authorize such claims.
*See, e.g., Monterroso v. Sullivan & Cromwell,* 591 F. Supp. 2d 567, 584 (2008).

existence of an actual disability but on "the employer's perception of the employee" and is a question of "intent." *Capobianco*, 422 F.3d at 57 (citations and internal quotations omitted). However, "[i]t is not enough that the employer perceive the employee as somehow disabled; the employer must regard the employee as disabled within the meaning of the ADA, i.e., having an impairment that substantially limits a major life activity." *Id. Accord, Jacques,* 386 F.3d at 201; *Colwell*, 158 F.3d at 646.

These is nothing in the record before this Court from which a jury could conclude that Chalom regarded Caronia as disabled within the meaning of the ADA.

The purpose of the "regarded as" definition of disability is to "cover individuals 'rejected from a job because of the "myths, fears and stereotypes" associated with disabilities.'" *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489-490 (1999) (quoting 29 C.F.R. pt. 1630, App. §1630.2(l)). A regarded as claim may be proved by showing either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489; *see* 29 C.F.R. § 1630.2(l).

Caronia simply fails to put forth evidence that Chalom regarded her as disabled, never mind disabled within the meaning of the ADA. According to Caronia "Chalom would ridicule her heart condition and say she was going to outlive him. Chalom told Caronia she was full of S--t." (Pl.'s Resp. to Def. 56.1 Statement at ¶51.) Such testimony evinces an absence of treatment based on the myths, fears and stereotypes associated with disabilities.

Moreover, she fails to identify any major life activity Defendants perceived her as

limited in.  Even if Defendants perceived her as unable to do her job, that by itself does not

provide evidence that Defendants "perceived her as disabled within the meaning of the ADA

since '[t]he inability to perform a single, particular job does not constitute a substantial limitation

in the major life activity of working.'" *Temple v. Bd. of Educ.*, 322 F. Supp. 2d 277, 281

(E.D.N.Y. 2004).  Plaintiff has not submitted any evidence that the Defendants "regarded her not

merely as unable to work in her specific job, but disabled from a 'broad range of jobs' as

compared with 'the average person having comparable training, skills and abilities." *Doe v. Bd.*

*of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 Fed. Appx. 46, 49 (2d Cir. 2003) (quoting *Bartlett v.*

*N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 82-83 (2d Cir. 2000)); *see Giordano v. City of New*

*York,* 274 F.3d 740 (2d Cir. 2001).

      Here, Plaintiff does not even argue, no less put forth evidence, that Defendants

regarded her as unable to perform any class of jobs.  Indeed, she does not even point to evidence

that Defendants perceived her as unable to do her job.   In sum, Caronia has failed to proffer

sufficient evidence to permit a trier of fact to conclude that she was regarded as disabled within

the meaning of the ADA.  Having failed to establish this element of her prima facie case, it is

unnecessary for the Court to address the other elements needed to sustain her federal cause of

action.  The motion for summary judgment is granted as to the ADA.

### B.  The Disability Claim Under New York Law.

      While disability discrimination under the ADA and the New York State Human

Rights Law, N.Y. Exec. Law § 296 et seq. ("NYHRL") is analyzed similarly, the definition of

disability is broader under the NYHRL.  *See State Div. of Human Rights v. Xerox Corp.*, 65

N.Y.2d 213, 218-19 (1985); *Shannon v. New York City Transit Auth.,* 332 F.3d 95, 104 n.2 (2d

Cir. 2003); *Branson v. Ethan Allen*, 2004 WL 2468610, at *3 (E.D.N.Y. Nov. 3, 2004). A disability under the NYHRL is a condition that either (1) prevents the exercise of a normal bodily function or (2) is "demonstrable by medically accepted clinical or laboratory diagnostic techniques." *Reeves v. Johnson Controls World Serv., Inc.*, 140 F.3d 144, 155 (2d Cir. 1998). "Thus an individual can be disabled under the [Human Rights Law] if his or her impairment is demonstrable by medically accepted techniques; it is not required that the impairment substantially limit that individual's normal activities." *Lovely H. v. Eggleston*, 235 F.R.D. 248, 260 (S.D.N.Y. 2006) (quoting *Hazeldine v. Beverage Media Ltd.*, 954 F. Supp. 697, 706 (S.D.N.Y. 1997). In other words, any "medically diagnosable impairment" is a disability under the NYHRL. *Barr v. New York City Trans. Auth.*, 2002 WL 25783, at *8 (E.D.N.Y. Feb. 20, 2002).

　　　　Like the ADA, the NYHRL provides for discrimination actions by persons who are regarded as disabled. *See* N.Y. Exec. Law § 292(21)(c) ("a condition regarded by others as such an impairment"). "However, because of the broader definition of disability under the NYHRL, how the employer must 'regard' the plaintiff is different. In order for her claims to survive summary judgment, [she] need only show that a reasonable jury could find that [defendants] (1) regarded her as having an impairment that either prevented the exercise of a normal bodily function or is demonstrable by medically accepted techniques or (2) mistakenly believed that [plaintiff's condition] was a physical impairment that either prevented the exercise of a normal bodily function or was demonstrable by medically accepted evidence." *Branson v. Ethan Allen Inc.*, 2004 WL 2468610, at *4 (E.D.N.Y. Nov. 3, 2004). Here there is no evidence to support either prong. As noted earlier, according to Caronia "Chalom would ridicule her heart

condition and say she was going to outlive him. Chalom told Caronia she was full of S--t." (Pl.'s Resp. to Def. 56.1 Statement at ¶51.)

Moreover, Plaintiff testified that she did not have any reason to believe that Chalom took any employment action against her because of her health. (Caronia Dep. at 360.) Thus, Caronia cannot show she suffered an adverse action because of her disability. Indeed, it appears that Caronia's claim is that Chalom's harassment resulted in her health issues, not that she was harassed because of her health. (*See* Caronia Aff. at ¶ 5 ("[Chalom] engaged in severe harassment of me and escalated it because of my health. I would tell him that his behavior was affecting my health and my blood pressure and that I was taking medication because of his behavior but he refused to stop harassing me in consideration of this medical condition.").) However, "the mental and/or physical fallout from the discrimination that was practiced against her does not give rise to an independent claim for disability discrimination - rather it goes to the issue of damages on her underlying discrimination claim." *Lee v. SONY BMG Music Entertainment*, 557 F. Supp. 2d 418, 425 (S.D.N.Y. 2008.).

In sum, Defendants' motion for summary judgment on Plaintiff's claims for disability discrimination under both federal and state law is granted.

### IV.  The Common Law Tort Causes of Action

Defendants' have moved for summary judgment on Plaintiff's common law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. The Court shall address each claim in turn.

Defendants' move for summary judgment on Plaintiff's claim for intentional infliction of emotional distress arguing that she cannot maintain said claim for the same conduct

21

that serves as a basis for her claims of discrimination pursuant to New York Human Rights Law. The motion is granted and the claim for intentional infliction of emotional distress is dismissed. Under New York law, intentional infliction of emotional distress is a theory of recovery that is available "only as a last resort" and may not be maintained where the offending conduct is embraced by another tort remedy, including theories of sexual harassment under the Human Rights Law. *See McIntyre v. Manhattan Ford*, 256 A.D.2d 269, 270, 682 N.Y.S.2d 167, 169 (1st Dept. 1998); *Conde v. Yeshiva Univ.*, 16 A.D.3d 185, 187, 792 N.Y.S.2d 387, 389 (1st Dept. 2005).

   With regard to the claim for negligent infliction of emotional distress, Defendants' motion is granted and the claim dismissed as the New York Workers' Compensation Law provides the exclusive remedy for negligence claims against an employer. *See, e.g., Ferris v. Delta Airlines, Inc.,* 277 F.3d 128, 138 (2d Cir. 2001); *Ruhling v. Tribune Co.*, 2007 U.S. Dist. LEXIS 116, at *76 (E.D.N.Y. Jan. 3, 2007).

   Defendants' seek summary judgment on Plaintiff's claims for action for assault as barred by New York's one year statute of limitations for intentional torts, N.Y. CPLR 215(3). Both parties agree that, as the instant action was commenced on July 27, 2005, recovery for any incidents prior to July 27, 2004 is barred by the statute of limitations. Accordingly, Defendants' motion for summary judgment on the claims for assault and battery is granted as to incidents which occurred prior to July 27, 2004.

## V. All Claims against Hustedt Hyundai, Hustedt
  **Chevrolet and Hustedt West are Dismissed**

   Defendants have moved for dismissal of the claims against Hustedt Hyundai,

Hustedt Chevrolet, and Hustedt Chevrolet West on the grounds that no such entities exist.

Rather, those names are used interchangeably with Chevrolet Inc., Hyundai, Inc. and West, Inc.

Plaintiffs do not oppose this portion of the motion. Accordingly, it is granted.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is decided as follows: summary judgment is granted as to Caronia's claims for (1) age discrimination, (2) disability discrimination and (3) claims for assault and battery based on incidents occurring prior to July 27, 2004 ; the claims for intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed; and all claims against Hustedt Chevrolet, Hustedt Hyundai, and Hustedt Chevrolet West are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York
        March 31 , 2009

                                          /s/_____
                                          Denis R. Hurley
                                          Senior District Judge